IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

| | | |
|---|---|---|
| TOMMY JORDAN, | ) | |
| | ) | Civil No. 2:06mc3279-F |
| Petitioner, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

**UNITED STATES' MOTION TO DENY PETITION TO QUASH
AND TO GRANT CROSS-PETITION FOR ENFORCEMENT**

The United States of America, by and through its undersigned counsel, respectfully moves for the entry of an order denying Tommy Jordan's petition to quash the IRS administrative summons served on attorney Richard L. Pyper and granting the Government's motion for an order directing Tommy Jordan to comply with a second administrative summons that was served on Jordan.  The United States also moves for such other relief as may be necessary or appropriate.

**STATEMENT OF FACTS**

Internal Revenue Service Special Agent Louie Wilson ("Wilson") is conducting a criminal investigation into the federal income tax return preparation and filing activities of Tommy Jordan, who does business as "Tax Tyme."  (Declaration of Special Agent Wilson at ¶ 2.)  Special Agent Wilson is inquiring into the question whether Jordan violated federal tax laws for the 2004 tax year.  (Id.)

Special Agent Wilson is seeking documents from Jordan to aid the criminal investigation. In particular, Special Agent Wilson seeks copies of returns that Jordan prepared for clients and retained in his possession, copies of records that Jordan obtained from his clients in the process of preparing those returns, records relating to "refund anticipation loans" made by Tax Tyme, records of payments received from clients, and copies of Jordan and Tax Tyme's correspondence with clients, with Household Bank, and with the IRS.  (Wilson Declaration at Exs. 1 and 3.)  In order to obtain these records, Special Agent Wilson has issued three administrative summonses, two of which are at issue in this proceeding.  The two summonses at issue request the same documents, which were described above.

Special Agent Wilson issued the first summons on October 14, 2005 to Jordan.  (Wilson Declaration at ¶ 3 and Ex. 1.)  The summons directed Jordan to appear before Special Agent Wilson on October 25 and to produce the documents.  (Id. at Ex. 1.)  Jordan failed to comply with that summons; that is, he failed to appear before Special Agent Wilson and he failed to produce the requested documents.  Instead, Special Agent Wilson received a letter from attorney Richard L. Pyper. dated October 27, 2005.  (Id. at Ex. 2.)  Pyper represented that Jordan would refuse to give testimony because "he has already met with you one time and answered your inquiries without the benefit of attending legal counsel."  (Id.)  Pyper also represented that Jordan did not possess the documents that had been requested in the summons.  In that regard Pyper stated:  "the taxpayer is no longer in possession of [the documents], having delivered them to the unde[r]signed prior to the date of your summons as collateral for an unpaid debt and for such other valid, legal purposes as are applicable, including but not limited to the attorney client privilege."  (Id.)

2

Special Agent Wilson then issued two summonses to Attorney Pyper. One of those was withdrawn because of a defect in service. The latter summons was issued on December 13, 2005 and it directed Pyper to appear in January 2006 and give testimony and produce the records that have been previously described. (Wilson Declaration at ¶ 6 and Ex. 3.) Special Agent provided notice of that summons to Jordan. (Id. at ¶ 7.) Pyper appeared before Special Agent Wilson on January 9, 2006 and advised Special Agent Wilson that no documents would be produced. (Id. at ¶ 8.) Pyper advised Special Agent Wilson that Jordan would instead be filing a petition to quash the summons. (Id.)

, but the final summons is at issue in this case. , described ab Louie Wilson ("Wilson") issued a summons to Petitioner for the same records that are at issue in this case. By letter dated October 27, 2005, Pyper advised Wilson that Petitioner was no longer in possession of the records, with Petitioner "having delivered them to the undersigned **prior to the date of your summons** as collateral for an unpaid debt and for such other valid, legal purposes as are applicable, including but not limited to the attorney client privilege."[1]

Therefore, on November 14, 2005, Wilson issued a summons to Pyper for the same records requested in the October 14, 2005 summons to Jordan. In response to the November 14 summons, Petitioner filed a Petition to Quash Third Party Summons. The November 14 summons issued to Pyper was defective because it did not provide the 23-day notice required for a third-party summons by 26 U.S.C. § 7609(a)(1). The November 14 summons was withdrawn by Pyper

---

[1] A copy of this letter is provided as "Exhibit 2" to the Declaration of Internal Revenue Service Special Agent Louie Wilson.

3

by a letter dated December 8.  The Petition to Quash the November 14 summons was dismissed as moot.

On December 13, 2005, Wilson served an IRS administrative summons ("the Summons") by certified mail upon Pyper in Montgomery, Alabama in connection with the investigation of the federal income tax return preparation and filing activities of Petitioner, for the purpose of inquiring into any offense connected with the administration or enforcement of the internal revenue laws.  *See* Declaration of Internal Revenue Service Special Agent Louie Wilson (" Wilson Declaration") at ¶¶ 2, 5 and 6.  The Summons directed Pyper to provide testimony and to produce for examination books, papers, records, and other data reflecting Petitioner's tax return preparation and filing activities, as more fully described in the Summons.[2]   In accordance with 26 U.S.C. § 7609, notice of the Summons was provided to Petitioner by sending a copy of the Summons to Petitioner by certified mail.  *Id.* at ¶ 7.  Petitioner timely filed his petition to quash the Summons with this Court on January 4, 2006.  On January 9, 2006, Pyper appeared at the IRS office in Montgomery, Alabama and advised Wilson that he would not be producing the documents requested in the Summons.  *Id.* at ¶ 8.  Pyper continues to refuse to comply with the Summons.  *Id.* at ¶ 8.

On January 4, 2006, Jordan filed the instant case, and he seeks to quash the summons that Special Agent Wilson served on attorney Pyper.  Pyper is actively representing Jordan in this proceeding.  Jordan argues in his petition to quash that the Court should not enforce the summons for a number of reasons.  First, Jordan contends that the IRS should be required to give notice to all of Jordan's Tax Tyme clients pursuant to 26 U.S.C. § 7609(a)(1).  Second, Jordan contends that

---

[2]  A true and correct copy of the Summons is attached as "Exhibit 3" to the Wilson Declaration.

the summons is unduly broad and demonstrates "pernicious behavior and the worst kind of fishing expedition." Third, Jordan contends that, to the extent that Tax Tyme's clients have filed their original 2004 federal income tax returns, the IRS already has the originals and therefore no need for Jordan's retained copies. Fourth, Jordan contends that the IRS has issued the summonses in bad faith with an intent to harass Jordan and his clients. Fifth, Jordan contends that his attorney, Pyper, needs the documents in order to defend Jordan during the course of the criminal investigation. Finally, Jordan contends that the IRS cannot generally satisfy the elements established by United States v. Powell, 79 U.S. 48 (1964), for the enforcement of an IRS summons.

The United States opposes Jordan's petition to quash the summons served on Pyper, and it also seeks an order directing Jordan to comply with the first summons that was served on Jordan.

## ARGUMENT

### THE UNITED STATES HAS MADE OUT A *PRIMA FACIE* CASE FOR ENFORCEMENT OF THE SUMMONSES.

A.    Introduction

Section 7602(b) of the Internal Revenue Code (26 U.S.C.) authorizes the IRS to issue an administrative summons for "the purpose of inquiring into any offense connected with the administration or enforcement of the internal revenue laws." Specifically, Section 7602 authorizes the IRS:

    (1)      To examine any books, papers, records, or other data which may be relevant or material to such inquiry;

    (2)      To summon –

– the person liable for tax or required to perform the act,

– any officer or employee of such person,

– any person having possession, custody, or care of books of account containing entries relating to the business of the person liable for tax or required to perform the act, or

– any other person the Secretary (of the Treasury) may deem proper,

to appear before the Secretary at a time and place named in the summons and to produce such books, papers, records, or other data, and to give such testimony, under oath, as may be relevant or material to such inquiry; and

(3)     To take such testimony of the person concerned, under oath, as may be relevant or material to such inquiry.

See 26 U.S.C. § 7602(a).

When an IRS summons is issued to a third party, notice of the summons is to be given to the person or persons identified in the summons. 26 U.S.C. § 7609(a). With respect to the summons served on attorney Pyper, he is a third party, and Jordan was accordingly entitled to notice of the summons under Section 7609(a). Notice of the summons was in fact provided to Jordan by sending a copy to him by certified mail on December 13, 2005. (Wilson Declaration at ¶ 7.) Any person entitled to notice of a summons under Section 7609(a) may institute a proceeding to quash the summons within twenty (20) days after notice is given. 26 U.S.C. § 7609(b). Jordan timely filed his petition to quash the summons on January 4, 2006. Under Sections 7402(b) and 7604(a), a petition to quash an IRS summons must be filed in the district

6

court of the district in which the person or entity summoned resides or is found.  Pyper resides in the Middle District of Alabama in Montgomery, Alabama.  (Pet. at ¶ 1.)

The United States may seek to compel compliance with a summons in the context of an action brought to quash the summons, 26 U.S.C. § 7609(b)(2), and it may also seek to compel the compliance with a summons served directly on a taxpayer, 26 U.S.C. §§ 7602, 7604.  The burden of proof in each type of case is the same; the United States has the initial burden of making a prima facie showing that the following requirements have been met:

(1)     the investigation has a legitimate purpose;

(2)     the summoned materials are relevant to that investigation;

(3)     the information sought is not already within the IRS's possession; and

(4)     the IRS has followed the procedural steps outlined in 26 U.S.C. § 7603.

United States v. Powell, 379 U.S. 48, 57-58 (1964); see also United States v. LaSalle National Bank, 437 U.S. 298, 318 (1978).  This showing can be, and typically is, made through the affidavit or sworn declaration of the IRS agent who issued the summons.  See e.g., United States v. Dynavac, Inc., 6 F.3d 1407, 1414 (9th Cir. 1993); United States v. Abrahams, 905 F.2d 1276, 1280 (9th Cir. 1990); Hintze v. I.R.S., 879 F.2d 121, 126 (4th Cir. 1989); United States v. Will, 671 F.2d 963, 966 (6th Cir. 1982).  Once this showing is made, the burden shifts to the petitioner to prove that enforcement of the summons would be an abuse of the court's process.  Powell, 379 U.S. at 58; see also States v. Balanced Fin'l Mgt., Inc., 769 F.2d 1440, 1444 (10th Cir. 1985).  Since summons enforcement actions are intended to be summary proceedings, the burden on the United States to make out its prima facie case is light, but the burden on the petitioner to demonstrate abuse of process is a heavy one.  See e.g., Dynavac, 6 F.3d at 1414; Fortney v. United

7

States, 59 F.3d 117, 119 (9th Cir. 1995); United States v. Feminist Federal Credit Union, 635 F.2d 529, 530 (6th Cir. 1980); United States v. Kis, 658 F.2d 526, 536 (7th Cir. 1981).  The petitioner must do more than just produce evidence that would call into question the United States' prima facie case.  He must  "prove a lack of institutional good faith"  Fortney, 59 F.3d at 119 (citations omitted).  To meet this burden, the "taxpayer must allege specific facts and evidence to support his allegations."  Liberty Financial Services v. United States, 778 F.2d 1390, 1393 (9th Cir. 1985). If the petitioner cannot refute the United States' prima facie showing, or cannot provide factual support for an affirmative defense, the district court should properly dispose of the proceedings on the papers before it and without an evidentiary hearing.  Balanced Fin'l Mgt., Inc., 769 F.2d at 1444.

       As demonstrated below, the United States can satisfy each of the four Powell elements on the basis of Special Agent Wilson's declaration, and it therefore respectfully seeks an order denying the petition to quash the summons served on attorney Pyper, enforcing the summons served on Jordan, and for such other relief as is necessary or appropriate.

       **1.     The Summons Was Issued for a Legitimate 26 U.S.C. § 7602 Purpose**

       A precondition to the enforcement or validity of an IRS summons issued under 26 U.S.C. § 7602 is that the summons be issued "in good-faith pursuit of the congressionally authorized purposes of § 7602."  United States v. LaSalle Nat'l Bank, 437 U.S. 298, 318 (1978).  Legitimate purposes under the statute include inquiring into any offense connected with the administration or enforcement of the internal revenue laws.  26 U.S.C. § 7602(b).  Section 7602(a)(2) imposes, in conjunction with Section 7602(b),  a duty on persons possessing information relevant or material to an inquiry into any offense connected with the administration or enforcement of the internal

8

revenue laws to produce that information at the request of the Secretary of the Treasury or his

delegate.

Here, the summonses were issued for the statutory purpose of investigating Jordan's tax

return preparation and filing activities for the 2004 tax year to inquire into any offense connected

with the administration or enforcement of the internal revenue laws. (Wilson Declaration at ¶¶ 2,

5.) As further required by Section 7602(d), as of the date of the Special Agent Wilson's

declaration, there has been no criminal referral to the Justice Department with respect to these

liabilities. (Id. at ¶ 11.)

> **2.      The Summoned Data "May Be" Relevant to the Purposes of the Investigation**

The second element of the Powell test requires that the IRS Summons seek information

that may be relevant to the purpose of the underlying investigation.  In United States v. Arthur

Young & Co., 465 U.S. 805 (1984), the Supreme Court announced the controlling standard of

relevance in summons enforcement cases:

> As the language of § 7602 clearly indicates, an IRS summons is not be judged by the
> relevance standards used in deciding whether to admit evidence in federal court.  *Cf.*
> Fed. Rule Evid. 401.  The language "may be" reflects Congress' express intention to
> allow the IRS to obtain items of even potential relevance to an ongoing investigation,
> without reference to its admissibility.   The purpose of Congress is obvious: the
> Service can hardly be expected to know whether such data will in fact be relevant until
> it is procured and scrutinized.  As a tool of discovery, the § 7602 summons is critical
> to the investigative and enforcement functions of the IRS, see United States v. Powell,
> 379 U.S. 48, 57, 85 S.Ct. 248, 254, 13 L.E.2d 112 (1964); the Service therefore should
> not be required to establish that the documents it seeks are actually relevant in any
> technical, evidentiary sense.

465 U.S. at 814 (emphasis in original).[3]  The Ninth Circuit has further explained this standard as requiring a "realistic expectation rather than an idle hope that something may be discovered." Tedder v. United States, 77 F.3d 1166, 1168 (9th Cir. 1996).

The summonses issued to Pyper seeks records relating to tax returns that Petitioner prepared and filed.  (See Exs. 1 and 3 to Wilson Declaration.)  For instance, the summonses require the production of copies of information relating to Jordan's clients, including dependent information, income and expense records, and records related to deductions.  These documents are directly relevant to Special Agent Wilson's investigation of Jordan into offenses related to the administration and enforcement of the internal revenue laws, such as filing false claims.

### 3.    The Summoned Data is Not Already in the Possession of the IRS

With the limited exception of correspondence between Jordan and the IRS, the summoned data is not already in the possession of the IRS.  (Wilson Declaration, at ¶ 9.)  With respect to the tax returns requested in the summonses, the IRS is only in possession of the information that was electronically submitted by Jordan.  The IRS does not possess any hard copies or printouts of the 2004 federal income tax returns prepared by Jordan, which might include handwritten notes or changes.  (Id. at ¶ 9.)

---

[3]  In its earlier *Powell* decision, the Supreme Court noted that the IRS can issue a summons to investigate "merely on suspicion that the law is being violated, or even just because it wants assurance that it is not."  *Powell*, 379 U.S. at 57 (quoting *United States v. Morton Salt Co.*, 338 U.S. 632, 642-43 (1950)).

4. **The IRS Has Followed the Procedural Steps Required for Enforcement of a Third-Party Summons**

Special Agent Wilson's declaration establishes that all of the procedural steps required under Title 26 for enforcement of the summonses have been satisfied. (Id. at ¶ 12.) The declaration of an IRS agent is sufficient to make this showing. Dynavac, Inc., 6 F.3d at 1414. First, with respect to the third party recordkeeper summons, Wilson complied with 26 U.S.C. § 7603 by serving Pyper with an attested copy of the summons by certified mail on December 13, 2005. (Wilson Declaration at ¶ 6.) Second, Wilson complied with 26 U.S.C. §7609 by properly and timely noticing Petitioner of the summons by sending a copy of the Summons to Petitioner by certified mail. (Id. at ¶ 7.)

B. Jordan's arguments lack merit

Jordan challenges the validity and enforceability of the IRS summons issued to Pyper on a host of bases, none of which have merit.

1. **The Summons is Allegedly Being Used to Drive Petitioner Out of Business**

Jordan alleges that the IRS has issued the Summons to Pyper for the improper purpose of "driving the Petitioner out of business" as well as conducting a criminal investigation. (See Pet. at ¶ 6.) As an initial matter, these bare conclusory statements cannot be used to rebut the United States' prima facie case for enforcement of the Summons. Balanced Fin'l Mgt., Inc., 769 F.2d at 1444 ("In responding to the Government's showing, it is clear that a taxpayer must factually oppose the Government's allegations by affidavit. Legal conclusions or mere memoranda of law will not suffice . . . Allegations supporting a 'bad faith' defense are . . . insufficient if conclusory."). In any event, the Internal Revenue Code provides the IRS with authority to

issue summonses not only for the purpose of civil enforcement, but also for "the purpose of inquiring into any offense connected with the administration of the internal revenue laws." 26 U.S.C. § 7602(b). Such summonses may freely issue unless the case has been referred to the Justice Department. 26 U.S.C. § 7602(c). Thus, since Jordan's case has not been referred to the Justice Department (Wilson Declaration at ¶ 11), his objection to the scope, subject matter, and purpose of the summonses are unfounded.

     **2.**      **Notice of the Summons Allegedly Needed to be Provided to Petitioner's Clients**

Jordan next contends that, under 26 U.S.C. Section 7609(a)(1), notice of the summons needed to be provided to his clients. Section 7609(a)(1) provides that "If any summons to which this section applies requires . . . the production of any portion of records made or kept on or relating to . . . any person (other than the person summoned) who is identified in the summons, then notice of the summons shall be given to any person so identified . . . ." Because this notice requirement only applies to people identified in the summons, and no specific clients of Jordan are identified, notice is not required under Section 7609(a)(1). In fact Jordan concedes that "[t]he summons does not list the names of the clients or otherwise identify them with any particularity." (Pet. at ¶ 4.)

     **3.**      **The summons is not overbroad**

Jordan alleges that the Summons is "over broad." (Pet. at ¶ 4.) But this allegation is without merit. The test for determining whether a summons is overbroad is whether the summons describes the requested documents in enough detail to inform the summoned party of exactly what is to be produced, <u>Abrahams</u>, 905 F.2d at 1282, 1285, and whether the summoned records may be

relevant to the inquiry, <u>In the Matter of the Tax Liabilities of: John Does v. United States</u>, 866 F.2d 1015, 1021 (8th Cir. 1989). Here, both requirements are satisfied. The requests in the summonses are sufficiently detailed to inform Pyper and Jordan of the records that are being sought, and these records may be relevant to the IRS's efforts to inquire into any offenses potentially committed by Jordan related to the administration or enforcement of the internal revenue laws in connection with Jordan's tax return preparation and filing activities.

### 4. The Summons is Allegedly Unduly Burdensome and May Require Disclosure of Proprietary Information

Jordan states, without providing any reason, that compliance with the summons would undermine attorney Pyper's ability to give legal counsel and advice to Jordan. (Pet. at ¶ 7.) With due respect, the United States suggests that this could be easily remedied: Pyper could simply copy, or pay someone to copy, the files requested, and Pyper could continue to use copies of the files to advise Jordan. To the extent that Jordan might assert that the records requested in the summonses are subject to the attorney-client privilege because Jordan transferred them to Pyper, Jordan is mistaken. <u>See</u> <u>Falsone v. United States</u>, 205 F.2d 734 (5th Cir. 1953).[4] In this regard, Jordan provides the Court with a further meritless objection, that "the subject summons may also require disclosure of proprietary information under Rule 45." (Pet. at ¶ 8.) No proprietary information of Jordan would be compromised by his compliance with the summons. Section 6103 of the Internal Revenue Code protects the confidentiality of taxpayer information. Moreover, none of these conclusory objections, including overbreadth or the necessity for disclosure of proprietary information, are sufficient to rebut Special Agent Wilson's declaration

---

[4] Decisions of the former Fifth Circuit issued before October 1, 1981 are precedent for the Eleventh Circuit. *Bonner v. City of Pritchard*, 661 F.2d 1206 (11th Cir. 1981).

and the United States' <u>prima</u> <u>facie</u> case for enforcement of the summons.  <u>Balanced Fin'l Mgt.</u>

<u>Inc.</u>, 769 F.2d at 1444.

### 5.    The IRS does not possess the information

Jordan asserts that much of the information sought by the summonses is already within the

IRS's possession.    However, this assertion is unsupported.  As mentioned above, with the limited

exception of correspondence between Petitioner and the IRS, the summoned data is not already in

the possession of the IRS.  (Wilson Declaration at ¶ 9.)  With respect to the tax returns requested

in the summonses, the IRS is only in possession of the information that was electronically

submitted by Jordan.  The IRS does not possess any hard copies or printouts of the 2004 federal

income tax returns prepared by Petitioner, which might include handwritten notes or changes.  (<u>Id</u>

at ¶ 9.

### 6.    There is no second "inspection"

Jordan alleges that the summonses violate 26 U.S.C. Section 7605(b).  Section 7605(b)

provides that "[n]o taxpayer shall be subjected to unnecessary examination or investigations, and

only one inspection of a taxpayer's books of account shall be made for each taxable year unless

the taxpayer requests otherwise or unless the Secretary, after investigation, notifies the taxpayer in

writing that an additional inspection is necessary."  Petitioner asserts that because an IRS

employee, Jeanne Armstrong, visited Jordan's business and reviewed the files of his clients, that

this constitutes a first "examination" of Jordan's clients' files.  Also, Jordan alleges that Special

Agent Wilson met with Jordan and attempted to "extract some admission of wrongdoing".  (Pet.

at 5.)  Jordan then asserts that the Summons violates Section 7605(b), because it allegedly calls

for a prohibited second inspection.

14

Jordan misunderstands § 7605(b), and he fails to demonstrate that any second inspection has taken place.  The Second Circuit has stated that "[t]he cursory examination of the taxpayer's records on February 28, 1957 was not shown to have completed the investigation: it did not constitute an 'inspection' within the meaning of this statute . . . ."  Nat'l Plate v. United States, 254 F.2d 92, 93 (2nd Cir. 1958) (cited in United States v. Schwartz, 469 F.2d 977, 984 (5th Cir. 1972)).  The court in Schwartz stated that "[w]e do not believe the use of the word 'inspection' in Section 7605(b) . . . can be so restricted as to mean that there is an 'inspection' every time the agent or special agent looks at a book of account of a taxpayer."  469 F.2d at 983.  In the present case it appears that Ms. Armstrong was conducting a "compliance check" with respect to Jordan's activities, which may have led to the present criminal investigation.  There is nothing to suggest that a first "inspection" has occurred in the instant case.

Moreover, even if a first inspection had been conducted, the Criminal Investigation Division, including Special Agent Wilson, is entitled to additional review of the documents.  As the Fourth Circuit has stated:

> "An inquiry by the Criminal Investigation Division is 'different in both approach and extent' from a routine audit.  Thus the examination and notations performed by a revenue agent do not 'fulfill the needs of a special agent investigating fraud.  The IRS' entitlement to a single 'meaningful examination' of a taxpayer's financial records may necessitate additional scrutiny of documents after a referral by the original auditor to the Criminal Investigation Division.  The special agent's fraud inquiry is regarded as a continuation of the original, uncompleted audit.  Additional examination of documents by a special agent is not a second inspection under § 7605(b), and the notice requirements of that section accordingly do not apply."

Spell v. United States, 907 F.2d 36, 38 (4th Cir. 1990) (citations omitted).  Thus, there has been no

second "inspection" of Jordan's clients' books of account, or of Jordan, for that matter.

> **7.     Jordan controls the records**

Jordan refused to comply with the first summons on the ground that he had already given

them to his attorney, and therefore that he was unable to comply with the summons.  That

argument is without merit.  It is well settled that a taxpayer must comply with an IRS summons if

he is in possession of the requested documents or otherwise controls them.  See United States v.

Howard, 360 F.2d 373 (3rd Cir. 1966).  A taxpayer may not refuse to comply with a summons

merely because his attorney is holding the records.  All taxpayer need do is request that his

attorney release the records to the IRS, since those records are within his control.

Attorney Pyper suggested in Exhibit 2 that he is holding those records as some sort of

collateral and that that somehow permits his client to disregard an IRS summons.  Rule 1.15 of

Alabama professional conduct rules require an attorney to safeguard client records.  Moreover,

even if Pyper had been discharged as Jordan's attorney, which he has not, he would still be

obliged to return Jordan's business records.  If Pyper has refused Jordan's request to release

Jordan's records to the IRS, Jordan should state that fact clearly and provide Pyper's basis for

refusing that request.  If Attorney Pyper believes it within his authority to refuse to release client

records upon request of the client, then that fact needs to be made clear so that the Government

can determine whether legal action is required to be taken directly against Mr. Pyper.

CONCLUSION

In sum, the United States has shown that it meets the four Powell factors and this Court

should enter an order denying Jordan's petition to quash the summons served on Pyper, an order

directing Jordan to comply with the first summons served on Jordan, and for such further relief as

this Court deems appropriate.

DATED this 6th day of March, 2006.

LEURA G. CANARY
United States Attorney

/s/ James T. Lyons
James T. Lyons
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 14198, Ben Franklin Station
Washington, D.C.  20044
Telephone: (202) 514-5880
Fax: (202) 514-9868
james.t.lyons@usdoj.gov

17

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 6th day of March, 2006, I electronically filed the foregoing with the Clerk of the Court using the CMF/ECF system, and I hereby certify that I have mailed by United States Postal Service the foregoing to the following:

Richard L. Pyper
P.O. Box 11706
Montgomery, AL 36111-0706


/s/ James T. Lyons_____
James T. Lyons