

www.irs.gov/efile

# Handbook

for Authorized IRS *e-file* Providers
of Individual Income Tax Returns







consider it done

# Electronic Return Origination

## Obtaining, Handling, and Processing Return Information from Taxpayers

An ERO originates the electronic submission of returns it either prepares or collects from taxpayers wishing to have their returns e-filed. The ERO must always identify the paid preparer (if any) in the appropriate field of the electronic record of returns it originates. EROs may either transmit returns directly to the IRS or arrange with another Provider to transmit the electronic return to the IRS. An Authorized IRS *e-file* Provider, including an ERO may disclose tax return information to other Providers for the purpose of preparing a tax return under Section 301.7216. For example, an ERO may pass on return information to an Intermediate Service Provider or a Transmitter for the purpose of having an electronic return formatted or transmitted to the IRS.

An ERO that chooses to originate returns that it has not prepared, but only collected, becomes an income tax return preparer of the returns when, as a result of entering the data, it discovers errors that require substantive changes and then makes the changes. A nonsubstantive change is a correction limited to a transposition error, misplaced entry, spelling error, or arithmetic correction. All other changes are considered substantive and the ERO becomes an income tax return preparer. As such, the ERO may be required to sign the tax return as the income tax return preparer.

## Safeguarding IRS *e-file* From Fraud and Abuse

While all Authorized IRS *e-file* Providers must be on the lookout for fraud and abuse in IRS *e-file*, EROs must be particularly diligent while acting in their capacity as the first contact with taxpayers filing a return. An ERO should always seek to recognize and prevent fraud and abuse of IRS *e-file*. An ERO should exercise due diligence in the preparation of returns involving the Earned Income Tax Credit (EITC), as it is a popular target for fraud and abuse. Section 6695(g) of the Internal Revenue Code requires paid preparers to exercise due diligence in the preparation of returns involving EITC. Be sure to complete all required worksheets and meet all record keeping requirements. A potentially abusive return is a return that is not fraudulent, is required to be filed by the taxpayer, but contains inaccurate information that may lead to an understatement

Chapter 3

## Electronic Return Origination

of a liability or the overstatement of a credit resulting in a refund to which the taxpayer may not be entitled. Indicators of an abusive or fraudulent return include unsatisfactory answers to filing status questions, multiple returns with same address, and missing or incomplete Schedules A and C income and expense documentation.

## Verifying Taxpayer Identification Numbers

To safeguard IRS *e-file* from fraud and abuse an ERO should confirm identities and TINs of taxpayers, spouses, and dependents listed on returns prepared by its firm. TINs include SSNs, EINs, Adopted Taxpayer Identification Numbers (ATIN), and Individual Taxpayer Identification Numbers (ITIN). To confirm identities an ERO might ask taxpayers not known to them to provide two forms of identification (picture IDs are preferable) that include the taxpayer's name and current address. Also, seeing Social Security cards and other documents will avoid including incorrect TINs for taxpayers, spouses, and dependents on returns. Care should be taken to ensure that all TINs are transcribed correctly. The TIN entered in the Form W-2 of the electronic return record must be identical to the TIN on the version provided by the taxpayer. The TIN on the Form W-2 should be identical to the TIN on the electronic return unless otherwise allowed by the IRS. Incorrect TINs, using the same TIN on more than one return or associating the wrong name with a TIN cause the largest number of returns to reject (see Acknowledgments of Transmitted Return Data in this chapter).

Additionally, the TINs for taxpayers, spouses, and dependents are identified by a Name Control. A Name Control is the first four significant letters of an individual taxpayer's last name as recorded by the Social Security Administration (SSA) or the first four letters/numbers of a business name. Having the wrong Name Control associated with a taxpayer's TIN contributes to a large portion of TIN-related rejects. The most common example for a return rejecting due to a mismatch between a taxpayer's TIN and Name Control involves newly married taxpayers. Typically, the taxpayer may file using a correct SSN along with the name used in the marriage, but the taxpayer has failed to update the records with the SSA to reflect a name change. To minimize TIN-related rejects, it is important to verify taxpayer TINs and Name Control information prior to submitting electronic return data to the IRS.

## Be Aware of Non-standard Information Documents

The IRS has identified questionable Forms W-2 as a key indicator of potentially abusive and fraudulent returns (see "Safeguarding IRS *e-file* From Fraud and Abuse"). Be on the lookout for suspicious or altered Forms W-2, W-2G, and 1099-R and forged or fabricated documents. Always enter the "non-standard form" code in the electronic record of individual income tax returns for Forms W-2, W-2G or 1099-R that are altered, handwritten or typed. An alteration includes any pen and-ink change. The information must never be altered after the forms are given to the ERO.

Any time you observe or become aware of questionable Forms W-2, report it to the IRS as detailed on the IRS web site or by calling 1-800-829-0433 (toll-free).

## Be Careful with Addresses

Addresses on Forms W-2, W-2G or 1099-R; Schedule C or C-EZ; or on other tax forms supplied by the taxpayer that differ from the taxpayer's current address must be input into the electronic record of the return. Addresses that differ from the taxpayer's current address must be input even if the addresses are old or if the taxpayer has moved. EROs should inform taxpayers that the address on the first page of the return, once processed by the IRS, will be used to update the taxpayer's address of record. The IRS uses a taxpayer's address-of-record for various notices that are required to be sent to a taxpayer's "last known address" under the Internal Revenue Code and for refunds of overpayments of tax (unless otherwise specifically directed by taxpayers, such as by Direct Deposit).

Finally, an ERO's address must never be put in fields reserved for taxpayers' addresses in the electronic return record or on Form 8453. The only exceptions are if the ERO is the taxpayer or the address of a power of attorney for the taxpayer for the tax return is the same as the address of the ERO.

## Avoiding Refund Delays

EROs should advise taxpayers that they can avoid refund delays by having all of their taxes and obligations paid, providing current and correct information to the ERO, ensuring that all bank account information is up-to-date, ensuring that their Social Security Administration records are current, and carefully checking their tax return information before signing the return.

EROs can do a number of things for clients and customers to avoid rejects and refund delays. Here are some suggestions:

- Insist on identification and documentation of social security and other identification numbers for all taxpayers and dependents;

- Exercise care in the entry of tax return data into tax return preparation software and carefully check the tax return information before signing the tax return;

- Avoid taxpayers who insist on claiming dubious items on tax returns or present altered or suspicious documents;

- Ask taxpayers if there were problems with last year's refund; if so, see if the conditions that caused the problems have been corrected or can be avoided this year; and

- Keep track of client issues that result in refund delays and analyze for common problems; counsel taxpayers on ways to address these problems.

# Refund Returns

When taxpayers are entitled to refunds, Providers should inform taxpayers that they have several options. An individual income tax refund may be applied to next year's estimated tax; received as a Direct Deposit or paper check; or be split so that a portion is applied to next year's estimated tax and the rest received as a Direct Deposit or paper check.

## Direct Deposit of Refunds

Taxpayers often elect the Direct Deposit option because it is the fastest way of receiving refunds. Providers must accept any Direct Deposit election to any eligible financial institution designated by the taxpayer. Refunds may be designated for Direct Deposit to qualified accounts in the taxpayer's name. Qualified accounts include savings, checking, share draft, or consumer asset accounts (for example, IRA or money market accounts). Refunds may not be designated for Direct Deposit to credit card accounts. Qualified accounts must be held by financial institutions within the United States and established primarily for personal, family, or household purposes. Qualifying institutions may be national banks, state banks (including the District of Columbia and political sub-divisions of the 50 states), savings and loan associations, mutual savings banks, and credit unions.

Taxpayers should be cautioned that some financial institutions do not permit the deposit of joint individual income tax refunds into individual accounts. The IRS is not responsible if Direct Deposits are refused for this reason. Check or share draft accounts that are "payable through" another institution may not accept Direct Deposits. Taxpayers should verify their financial institution's Direct Deposit policy before they elect the Direct Deposit option.

Taxpayers who choose Direct Deposit must provide Providers with account numbers and routing numbers for qualified accounts. The annual tax packages show how to find and identify these numbers. This information is best obtained from official financial institution records, account cards, checks or share drafts that contain the taxpayer's name and address. The sole exception involves accounts specifically created to receive refunds that repay Refund Anticipation Loans (RAL) and other refund products offered by financial institutions. In those cases Providers may supply the identifying account data.

Additionally, a Provider must never charge a separate fee for Direct Deposit and must accept any Direct Deposit election by a taxpayer to any eligible financial institution. The Provider must advise the taxpayer that a Direct Deposit election cannot be rescinded and that changes cannot be made to routing numbers of financial institutions or to the taxpayer's account numbers after IRS has accepted the return. The Provider must not alter the Direct Deposit information in the electronic record after taxpayers have signed the tax return. Providers with repeat customers or clients should check to see if taxpayers have new accounts. Some software

stores last year's information and reuses it unless it is changed. Taxpayers will not receive Direct Deposit of their refunds if account information is not updated to reflect current information.

Refunds that are not Direct Deposited because of institutional refusal, erroneous account or routing numbers, closed accounts, bank mergers, or any other reason will be issued as paper checks, resulting in refund delays of up to ten weeks. While the IRS will ordinarily process a request for Direct Deposit, it reserves the right to issue a paper check and does not guarantee a specific date by which the refund will be deposited into the taxpayer's account. Treasury's Financial Management Service (FMS) issues Federal income tax refunds and offsets taxpayers' refunds to pay off past-due child support or Federal agency debts such as student loans. Neither the IRS nor FMS is responsible for the misapplication of a Direct Deposit that is caused by error, negligence, or malfeasance on the part of the taxpayer, Authorized IRS *e-file* Provider, financial institution, or any of their agents.

## Balance Due Returns

Taxpayers who owe additional tax must pay their balances due by the original due date of the return or be subject to interest and penalties. An extension of time to file may be filed electronically by the original return due date, but it is an extension of time to file the return, not an extension of time to pay a balance due. Providers should inform taxpayers of their obligations and options for paying balances due. Taxpayers have several choices when paying any taxes owed on their returns as well as estimated tax payments.

### Electronic Funds Withdrawal

Taxpayers can e-file and, at the same time, authorize an electronic funds withdrawal. Taxpayers who choose this option must provide account numbers and routing transit numbers for qualified savings, checking or share draft accounts to the Authorized IRS *e-file* Provider. The IRS tax return instructions describe how to find and identify these numbers. This information is best obtained from official financial institution records, account cards, checks or share drafts that contain the taxpayer's name and address.

Providers should caution taxpayers to ensure, before they e-file, that their financial institution allows electronic funds withdrawal requests from the designated account. Payments cannot be authorized for this purpose from some credit union share accounts.

Taxpayers can schedule the payment for withdrawal on a future date. Scheduled payments must be effective on or before the return due date. For example, the Provider may transmit an individual income tax return in March and the taxpayer can specify that the withdrawal be made on any day on or before the return due date. The taxpayer does not have to remember to do anything at a later date. For returns transmitted after the due date, the payment date must be the same as the date the return is transmitted. Electronic Funds Withdrawal payments must be authorized at the time the balance due return or form is e-filed.

Payments can be made by electronic funds withdrawal for the following:

- Current year Form 1040 series return;

- Form 4868, *Application for Automatic Extension of Time to File U.S. Individual Income Tax Return*;

- Form 2350, *Application for Extension of Time to File for U.S. Citizens and Resident Aliens Abroad Who Expect to Qualify for Special Treatment;* and

- Form 1040-ES, *Estimated Tax for Individuals.* Only one estimated tax payment can be made at the time that the Form 1040 is electronically filed.

Providers should be careful to ensure that all the information needed for the electronic funds withdrawal request is included with the return. Taxpayers must provide all of the following:

- Routing transit number (RTN);

- Account number;

- Type of account (checking or savings);

- Date of scheduled electronic funds withdrawal (if applicable); and

- Amount of the withdrawal.

If taxpayers do not provide all of the needed information, Providers must contact the taxpayers. If the Provider is unsuccessful in obtaining the electronic funds withdrawal information but the returns are otherwise complete, the Provider should proceed with the origination of the electronic return data to the IRS. The Provider must notify the taxpayer(s) in writing that other arrangements must be made to pay the balance due.

**Electronic
Return
Origination**

## Credit Card Payments

Taxpayers may also pay electronically using a credit card. Credit card payments can be made when e-filing or separately via telephone or the Internet.

■ **Integrated e-file and e-pay:** Taxpayers can e-file and, at the same time, pay the balance due by credit card if the tax software used includes this option. Taxpayers who choose this option must provide Providers with the credit card number, expiration date, and possibly, the cardholder's address information. The credit card service provider will charge the taxpayer a convenience fee based on the amount of the tax payment. Taxpayers should be informed of the convenience fee before the return is filed. Providers should caution taxpayers to ensure, before they e-file, that the necessary line of credit is available.

■ **Pay by Phone or Internet:** Taxpayers may pay a balance due by phone or the Internet using a major credit card (American Express® Card, Discover® Card, MasterCard®, or Visa® card). This service is available through credit card service providers. The service providers charge a convenience fee based on the amount of the tax payment. Taxpayers will be advised of the fee during the transaction and can choose to end the transaction before the payment is completed and confirmed. EROs should inform taxpayers of this option and advise them that fees may vary between service providers.

Payments can be made by phone or the Internet via credit card for the following:

■ Current year Form 1040 series returns, including balance due notices;

■ Prior year Form 1040 series returns (applies to past due payments where no Installment Agreement);

■ Form 4868, *Application for Automatic Extension of Time to File U.S. Individual Income Tax Return;*

■ Form 1040-ES, *Estimated Tax for Individuals;* and

■ Installment Agreement payments.

## Electronic Federal Tax Payment System (EFTPS)

Taxpayers can pay balances due and estimated taxes year round using the Electronic Federal Tax Payment System (EFTPS). Taxpayers enroll in EFTPS-OnLine via an official government site on the Internet, using a user-friendly Web interface. After enrollment, taxpayers receive a confirmation package by mail with instructions. For added security, a unique Personal Identification Number (PIN) is mailed separately to the taxpayers. To make payments on-line, taxpayers will need the PIN an Internet password. Taxpayers can refer to the confirmation package for instructions on obtaining an Internet password.

## Pay by Check

Taxpayers may pay the balance due by mailing a check accompanied by Form 1040-V, *Payment Voucher.* These forms are found in many individual income tax return packages. Authorized IRS *e-file* Providers must supply Form 1040-V to taxpayers, if needed, and help them identify the correct mailing address from the chart on the back of the form. Vouchers do not have to be mailed at the same time the electronic return is transmitted. For example, the return may be transmitted January and the taxpayer may mail the payment and voucher at any time on or before the return due date.

## Installment Agreement Requests

Taxpayers who cannot pay the amount they owe for Form 1040 series returns may submit Form 9465, *Installment Agreement Request,* to the IRS. Form 9465 may be transmitted electronically (if supported by software) with the taxpayer's electronic return data, or it may be submitted later, either electronically or on paper. If accepted, the IRS charges a user fee for setting up the installments.

Chapter 3

**Electronic
Return
Origination**

# Signing an Electronic Tax Return

As with an income tax return submitted to the IRS on paper, an electronic income tax return must be signed by the taxpayer as well as by the paid preparer if applicable. Taxpayers may sign individual income tax returns either electronically or on a paper declaration. There are currently two methods for signing individual income tax returns electronically (see "Electronic Signatures for Taxpayers", below).

Whether using a paper or electronic signature, taxpayers must sign and date the Declaration of Taxpayer to authorize the origination of the electronic submission of the return to the IRS prior to the transmission of the return to IRS. The Declaration of Taxpayer includes the taxpayer's declaration under penalties of perjury that the return is true, correct, and complete, as well as the taxpayers' Consent to Disclosure. The Consent to Disclosure authorizes the IRS to disclose information to the taxpayers' Authorized IRS *e-file* Providers. Intermediate Service Providers, Transmitters, and EROs are authorized by taxpayers to receive from the IRS an acknowledgement of receipt or reason for rejection of the electronic return, an indication of any refund offset, the reason for any delay in processing the return or refund and the date of the refund.

Taxpayers must sign a new declaration if the electronic return data on individual income tax returns is changed after taxpayers signed the Declaration of Taxpayer and the amounts differ by more than either $50 to "Total income" or "AGI," or $14 to "Total tax," "Federal income tax withheld," "Refund," or "Amount you owe."

## Electronic Signatures for Taxpayers

There are two methods of signing individual income tax returns with an electronic signature available for use by taxpayers. Both methods allow taxpayers to use a Personal Identification Number (PIN) to sign the return and the Declaration of Taxpayer.

One method is referred to as Self Select PIN. The Self-Select PIN method requires taxpayers to provide their prior year Adjusted Gross Income (AGI) amount for use by the IRS to authenticate the taxpayers. When taxpayers sign using the Self-Select method and enter their PIN directly in the electronic return, signature documents are not required.

The other method is referred to as the Practitioner PIN and does not require the taxpayer to provide their prior year AGI amount. A signature authorization form must be completed when using the Practitioner PIN method (see "IRS *e-file* Signature Authorization", later).

Regardless of the method of electronic signature used, taxpayers may enter their PIN in the electronic return. The ERO may select, or the software may generate, the taxpayer's PIN if the taxpayer agrees by signing an IRS *e-file* signature authorization containing the PIN.

When taxpayers sign using the Self-Select method and enter their PIN directly in the electronic return, signature documents are not required. In all other instances, taxpayers must sign signature authorization forms. The Practitioner PIN method also requires use of the signature authorization forms (see "IRS *e-file* Signature Authorization", later).

The following taxpayers are ineligible to sign individual income tax returns with an electronic signature using either the Self-Select PIN or Practitioner PIN method:

- Taxpayers who filed Form 1040-NR or 1040-SS the prior tax year; and

- Taxpayers required to file the following forms, which must be attached to Form 8453, *U.S. Individual Income Tax Declaration for an IRS e-file Return* or Form 8453 OL, *U.S. Individual Income Tax Declaration for an IRS e-file Online Return*:

  - Form 3115, *Application for Change in Accounting Method*;

  - Form 3468, *Investment Credit, Historic Structure Certificate*;

  - Form 5713, *International Boycott Report*;

  - Form 8283, *Non-Cash Charitable Contribution, Section B Appraisal Summary*;

  - Form 8332, *Release of Claim to Exemption for Children of Divorced or Separated Parents*;

  - Form 8858, *Information Return of U.S. Persons With Respect To Foreign Disregarded Entities*; or

  - Form 8885, *Health Coverage Tax Credit*.

The following taxpayers are also ineligible to sign individual income tax returns with the Self-Select PIN method, but can use the Practitioner PIN method:

- Primary taxpayers under age sixteen who have never filed; and

- Secondary taxpayers under the age sixteen who did not file the prior tax year.

If the taxpayer is ineligible to use an electronic signature or chooses not to do so, a signature on a paper declaration must be completed (see "Paper Signatures", later).

Chapter 3

**Electronic Return Origination**

## IRS *e-file* Signature Authorization

In some instances, taxpayers may wish to sign electronically, but are unable to enter their PIN directly in the electronic return. Taxpayers authorize the ERO to enter their PINs in the electronic return record by completing the appropriate IRS *e-file* signature authorization form. Form 8879, *IRS e-file Signature Authorization* authorizes an ERO to enter PINs on Individual Income Tax Returns and Form 8878, *IRS e-file Authorization for Application of Extension of Time to File* authorizes an ERO to enter their PINs on Forms 4866, 2688, and 2350.

The ERO may enter the taxpayers' PINs in the electronic return record before the taxpayers sign Form 8879 or 8878, but the taxpayers must sign and date the appropriate form before the ERO originates the electronic submission of the return. In most instances, the taxpayer must sign and date the Form 8879 or Form 8878 after reviewing the return and ensuring the tax return information on the form matches the information on the return.

Taxpayers who provide a completed tax return to an ERO for electronic filing may complete the IRS *e-file* Signature Authorization without reviewing the return originated by the ERO. The line items from the paper return must be entered on the applicable Form 8879 or Form 8878 prior to the taxpayers sign and date the form. The ERO may use these pre-signed authorizations as authority to input the taxpayer's PIN only if the information on the electronic version of the tax return agrees with the entries from the paper return.

Taxpayers and the ERO representative must always complete and sign Forms 8879 or 8878 for the Practitioner PIN method of electronic signature. Taxpayers may use the Practitioner PIN Method to electronically sign Form 4868 if a signature is required. A signature is only required for Form 4868 when an electronic funds withdrawal is also being requested.

The ERO must retain Forms 8879 and 8878 for three years from the return due date or the IRS received date, whichever is later. EROs must not send Forms 8879 and 8878 to the IRS unless the IRS requests they do so.

## Electronic Signatures for EROs

If taxpayers sign returns using either of the electronic signature methods, the ERO must also sign with a PIN. EROs should use the same PINs for the entire tax year. The PIN may be manually input or software generated in the electronic record in the location designated for the ERO EFIN/PIN. The ERO is attesting to the ERO Declaration by entering a PIN in the EFIN/PIN field. For returns prepared by the ERO firm the return preparer is declaring under the penalties of perjury that the return was reviewed and is true, correct, and complete. For returns prepared by other than the ERO firm that originates the electronic submission, the ERO attests that the return preparer signed the copy of the return and that the electronic return contains tax information identical to that contained in the paper return. The paid preparer's identifying information (e.g. name, address, and SSN or PTIN) must also be entered in the e-file return.

## Paper Signatures

If providing the signature on a paper declaration, Form 8453, *U.S. Individual Income Tax Declaration for an IRS e-file Return,* must be completed and signed before the electronic data portion of the return is submitted. A substitute Form 8453 requires approval from the IRS prior to its use. The taxpayer's (and spouse's in the case of a joint return) name, address, social security number, and tax return information in the electronic transmission must be identical to the information on the Form 8453 that the taxpayer signed and provided for submission to the IRS. The form must be signed by both the taxpayer (and spouse in the case of a joint return) and the ERO.

■ **Taxpayer(s)**— The taxpayer must sign and date the "Declaration of Taxpayer" section and check the correct box after thoroughly reading the declaration. The taxpayer must verify the information on the electronic portion of the return and on Form 8453. The taxpayer may verify the information on the electronic portion of the return by viewing this information on a computer display terminal. A taxpayer need not verify the electronic portion of the return prior to its transmission if the taxpayer provided a completed paper return for filing and the information on the electronic portion is identical to the information provided by the taxpayer.

■ **ERO**— The ERO must sign and complete all the requested information in the "Declaration of Electronic Return Originator (ERO) and Paid Preparer" section after thoroughly reading the declaration. An ERO may authorize members of its firm or designated employees to sign

**Electronic
Return
Origination**

for the ERO, but the ERO is still responsible for all electronically filed returns originated by its firm. EROs do not have to disclose their EIN or SSN on the copies they supply to taxpayers.

■ **Paid Preparer—** If the return was prepared for a fee, the paid preparer must also sign the Form 8453. If the paid preparer signs as or for the ERO, the preparer should check the "Also the Paid Preparer" box and not complete the "Paid Preparer's Use Only" section. Paid preparers do not have to disclose their SSNs or EINs on the copies they supply to taxpayers. If a taxpayer gives the ERO a return already prepared by a paid preparer who did not sign the Form 8453, the ERO must attach a copy of pages 1 and 2 of the return that contains the paid preparer's signature to the Form 8453. Write **Copy—Do Not Process** on both pages.

■ **Volunteer Program Sponsor—** Unpaid preparers in IRS Sponsored programs including Volunteer Income Tax Assistance (VITA), Tax Counseling for the Elderly (TCE), Outreach, and Taxpayer Assistance Centers in IRS offices must identify themselves or the volunteer program on Form 8453. Sponsors are not required to sign Forms 8453 as EROs, but may do so. Sponsors that choose not to sign as an ERO must include in the ERO declaration, the volunteer organization name or acronym, and if operating at multiple sites, the site designation number.

■ **Employer Offering IRS** *e-file* **as an Employee Benefit—** Employers are not required to sign Form 8453 as EROs, but may do so. Employers that choose not to sign as EROs must include in the ERO declaration their name, address, the designation "Employee Benefit", and, if operating at multiple sites, the site designation number.

## Sending Paper Signatures to the IRS

After electronic return data is acknowledged as accepted (See "Acknowledgments of Transmitted Return Data"), EROs must mail within three business days the corresponding Forms 8453, with other required forms to the IRS. Forms W 2, W-2G and 1099-R should not be sent to the IRS. If an electronic signature was used in signing the document and was accepted, a Form 8453 is not used and is not submitted to the IRS (see "Electronic Signatures", above). See Publication 1345A for the current mailing address. As a composite tax return is not considered filed until the Forms 8453 are received by the IRS, EROs who are lax, negligent or untimely in mailing Forms 8453 to the IRS may be sanctioned.

The IRS corresponds with EROs when Forms 8453 are not received or are otherwise determined to be missing or incomplete. EROs must supply replacements, complete with attachments. If EROs do not send replacement Forms 8453, complete with attachments, when requested, the IRS will contact the taxpayers to obtain them. This does not apply to returns that were electronically signed by the taxpayer.

# Submitting the Electronic Return to the IRS

An ERO must originate the electronic submission of a return as soon as possible after it is signed. Individual income tax returns must not be electronically filed prior to the ERO's receipt of Forms W-2, W-2G, or 1099-R. If the taxpayer is unable to secure and provide a correct Form W-2, W-2G, or 1099-R, the return may be electronically filed after Form 4852 is completed in accordance with the use of that form. If Form 4852 is used, the non-standard W-2 indicator must be included in the record and the Form 4852 must be retained by the ERO in the same manner required for Forms W-2, W-2G, and 1099-R.

An ERO must ensure that stockpiling of returns does not occur at its offices. Stockpiling refers to either collecting returns from taxpayers or from another Authorized IRS e-file Provider prior to official acceptance in IRS *e-file*. Or, after official acceptance to participate in IRS e-file, stockpiling refers to waiting more than three calendar days to submit the return to the IRS once the ERO has all necessary information for origination. Returns that are held prior to the date that electronic returns may be transmitted to the IRS are not considered stockpiled. EROs must advise taxpayers that returns will not be transmitted to the IRS until electronic returns may be transmitted.

## Submission of Paper Documents to the IRS

IRS *e-file* returns must contain all the same information as returns filed completely on paper. EROs are responsible for ensuring that all paper documents required to complete the filing of returns are submitted to the IRS. Attach all appropriate supporting documents that must be submitted to the IRS (such as a supporting Form 8332, *Release of Claim to Exemption for Child of Divorced or Separated Parents*) to the Form 8453 and send them to the IRS. EROs must sign and ensure the accuracy of the Form 8453. State income tax returns in the Federal/State Program often require that paper documents be prepared and forwarded to state tax administration agencies. Be sure to follow each state's rules when state income tax returns are prepared.

# ERO Duties After
# Submitting the Return to the IRS

## Record Keeping and Documentation Requirements

EROs must retain and make available to the IRS upon request, until the end of the calendar year in which a return was filed, the following material at the business address from which the return was originated. An ERO may retain the required records at the business address of the Responsible Official during any period of time the office is closed.

- A copy of signed Form 8453, any supporting documents that are not included in the electronic return data and copies of Forms W-2, W-2G, and 1099-R;

- A copy of signed IRS *e-file* consent to disclosure forms for taxpayers who signed using an electronic signature;

- A complete copy of the electronic portion of the return that can be readily and accurately converted into an electronic transmission that the IRS can process; and

- The acknowledgment file for IRS accepted returns.

Forms 8879 and 8878 must be available to the IRS in the same manner described above, for three years from the due date of the return or the IRS received date, whichever is later.

EROs may electronically image and store all paper records they are require to retain for IRS *e-file*. This includes signed Forms 8453 and paper copies of Forms W-2, W-2G, and 1099-R as well as any supporting documents not included in the electronic record and Forms 8879 and 8878. The storage system must satisfy the requirements of Revenue Procedure 97-22, *Retention of Books and Records*. In brief, the electronic storage system must ensure an accurate and complete transfer of the hard copy to the electronic storage media. All records must be able to be reproduced with a high degree of legibility and readability (including the taxpayers' signatures) when displayed on a video terminal and when reproduced in hard copy.

## Providing Information to the Taxpayer

The ERO must provide a complete copy of the return to the taxpayer. However, the copy need not contain the social security number of the paid preparer. A complete copy of a taxpayer's return includes Form 8453 and other documents that cannot be electronically transmitted, when applicable, as well as the electronic portion of the return. The electronic portion of the return can be contained on a replica of an official form or on an unofficial form. However, on an unofficial form, data entries must be referenced to the line numbers or descriptions on an official form. If the taxpayer provided a completed paper return for electronic filing and the information on the electronic portion of the return is identical to the information provided by the taxpayer, a printout of the electronic portion of the return does not have to be provided to the taxpayer. The ERO should advise the taxpayer to retain a complete copy of the return and any supporting material. The ERO should also advise the taxpayer that an amended return, if needed, must be filed as a paper return and mailed to the submission processing center that would handle the taxpayer's paper return. Refer to the current year's tax package for addresses.

## Acknowledgments of Transmitted Return Data

The IRS electronically acknowledges the receipt of all transmissions. Returns in each transmission are either accepted or rejected for specific reasons. Accepted returns meet the processing criteria and are considered "filed" as soon as the return is signed electronically or through the receipt by the IRS of a paper signature. Rejected returns fail to meet processing criteria and are considered "not filed". The acknowledgment identifies the source of the problem using a system of error reject codes and form field numbers (sequence numbers). The error reject codes tell why the return rejected and the form field numbers tell which fields of the electronic return data are involved. Publication 1345A, *Filing Season Supplement for Authorized IRS e-file Providers* is issued annually and contains information to help identify the cause of the reject.

The acknowledgement record of an accepted individual income tax return contains other information that is useful to the originator. The record confirms if the IRS accepted a PIN, if the taxpayer's refund will be applied to a debt, if an elected electronic funds withdrawal paid a balance due, and if the IRS approved a request for extension on Form 2688. The ERO should check acknowledgement records regularly to identify returns requiring follow up action. The ERO should take reasonable steps to address issues identified on acknowledgement records. For example, if the IRS does not accept a PIN of an individual income tax return, the ERO must provide a completed and signed Form 8453 for the return.

**Electronic
Return
Origination**

The ERO must, at the request of the taxpayer, provide the Declaration Control Number (DCN) and the date the electronic individual income tax return data was accepted by the IRS. Form 9325, *Acknowledgment and General Information for Taxpayers Who File Returns Electronically*, may be used for this purpose. The ERO must also, if requested, supply the electronic postmark if the Transmitter provided one for the return.

Rejected electronic individual income tax return data can be corrected and retransmitted without new signatures or authorizations if changes do not differ from the amount in the electronic portion of the electronic return by more than $50 to "Total income" or "AGI", or more than $14 to "Total tax," "Federal income tax withheld," "Refund," or Amount you owe". Taxpayers must be given copies of the new electronic return data. If new signatures are required, the taxpayer must be given copies of the new signatures.

In the Federal/State e-file Program, if Federal electronic return data rejects due to errors, the state electronic return data also rejects. The converse is also true. That is, if the state electronic return data is rejected by the IRS because of error, the Federal electronic return data also rejects. Once both the Federal and state electronic return data is accepted by the IRS, the subsequent rejection of state electronic return data by a state tax administration agency will not impact the accepted Federal electronic return data. States determine when state electronic return data received from the Federal/State e-file Program is accepted as filed. Contact the state tax administration agency when problems or questions arise.

## Resubmission of Rejected Tax Returns

If the IRS rejects the electronic portion of a taxpayer's individual income tax return for processing and the reason for the rejection cannot be rectified, the ERO must take reasonable steps to inform the taxpayer of the rejection within 24 hours. When the ERO advises the taxpayer that the return has not been filed, the ERO must provide the taxpayer with the reject code(s) accompanied by an explanation. If the taxpayer chooses not to have the electronic portion of the return corrected and transmitted to the IRS or if it cannot be accepted for processing by the IRS, the taxpayer must file a paper return. In order to be filed timely, the paper return must be filed by the later of the due date of the return or ten calendar days after the date the IRS gives notification that the electronic portion of the return is rejected or that it cannot be accepted for processing. The paper return should include an explanation of why the return is being filed after the due date.

## Advising Taxpayers about Refund Inquiries

EROs should tell taxpayers how to follow up on returns and refunds by pointing out the "Where's My Refund" feature on the IRS web site. If taxpayers do not have access to the Internet, the ERO should provide taxpayers with the Refund Hotline information. The Refund Hotline number is 1-800-829-1954 (toll-free) and will have information about taxpayers' refunds (when it becomes available).

To call the Refund Hotline, taxpayers will need to enter the first Social Security Number shown on their tax return, the filing status, and the exact amount of the refund in whole dollars. Before checking on refunds, taxpayers should wait at least three weeks from the time the return data is acknowledged as accepted. Because refund information is updated each weekend, taxpayers should be advised not to call more than once a week. This will save taxpayers from checking on their refunds with no possibility of success.

## Refund Delays

Taxpayers often ask EROs to help them when refunds take longer than expected. Refunds may be delayed for a number of reasons, including the following:

- Errors in Direct Deposit information (refunds will then be sent by check);
- Financial institution refusals of Direct Deposits (refunds will then be sent by check) or delays in crediting the Direct Deposit to the taxpayer's account;
- Estimated tax payments differ from amount reported on tax return (for example, fourth quarter payments not yet on file when return data is transmitted);
- Bankruptcy;
- Inappropriate claims for the Earned Income Tax Credit; or
- Recertifications to claim the Earned Income Tax Credit.

Taxpayers will receive a letter or notice explaining the issue(s) and how to resolve the issue(s). The letter or notice will contain the contact telephone number that the taxpayer can use for further assistance.

If taxpayers' refunds are lost or misapplied, taxpayers do not receive notices or letters, or there is no information on the Refund Hotline (see "Advising Taxpayers about Refund Inquiries", above), advise taxpayers to call the IRS Tax Help number listed in tax packages.

**Electronic
Return
Origination**

## Refund Offsets

The IRS offsets as much of a refund as is needed to pay off overdue taxes owed by taxpayers and notifies them when this occurs. The Financial Management Service (FMS) offsets taxpayers' refunds to pay off past-due child support or Federal agency debts such as student loans. Offsets to non-tax debts occur after the IRS has certified the refunds to FMS for payment but before FMS makes the Direct Deposits or issues the paper checks. Refund offsets reduce the amount of the expected Direct Deposit or paper check but they do not delay the issuance of the remaining refund (if any) after offset. If taxpayers owe non-tax debts they may contact the agency they owe, prior to filing their returns, to determine if their debts were submitted for refund offset. If the IRS determines at time the return is filed that refunds will be offset, a Debt Indicator is provided on the Acknowledgement File. FMS sends taxpayers offset notices if any part of their refund is applied to non-tax debts. Taxpayers should contact the agencies identified in the FMS offset notice when offsets occur if they dispute the non-tax debts or have questions about the offsets. If a refund is in a joint name but only one spouse owed the debt, the "injured spouse" should file Form 8379, *Injured Spouse Claim and Allocation.*

# Other EROs

## IRS Sponsored Programs

Often individuals or organizations serve as unpaid preparers in IRS sponsored programs including Volunteer Income Tax Assistance (VITA), Tax Counseling for the Elderly (TCE), Outreach, and Taxpayer Assistance Centers in IRS offices. For IRS sponsored programs, unless otherwise noted, all requirements of an Authorized IRS *e-file* Provider apply. A manual or electronic quality review system is required to review each electronically filed return. The IRS may designate an individual for this purpose. The IRS will advise the VITA or TCE sponsor how to submit or transmit returns. Some options available to the IRS include:

- Submission of returns by VITA or TCE sponsors on paper, magnetic disk, or in an electronic transmission to a designated IRS office;

- Submission of returns by VITA or TCE sponsors via direct transmission to the IRS; or

- Submission of returns by VITA or TCE sponsors through a third party transmitter.

A VITA or TCE sponsor can only accept a return for electronic filing that meets the criteria for VITA or TCE assistance. Only the returns and accompanying forms and schedules included in a VITA or TCE training course may be accepted for electronic filing by a VITA or TCE sponsor. A VITA or TCE sponsor may collect a fee only if it is that is directly related to defraying the actual cost of electronically transmitting a tax return. A VITA or TCE sponsor may also collect this fee on behalf of a third party Transmitter that electronically transmitted a VITA or TCE return. Before a VITA or TCE sponsor may collect a fee, the sponsor must advise the taxpayer that the fee is not for preparation of the return and the VITA or TCE service is offered without regard to either the electronic filing or the collection of a fee.

A VITA or TCE sponsor and the IRS may enter into an agreement that provides for the retention of copies of tax returns, Forms 8453, and IRS *e-file* Signature Authorizations by the IRS. This information must be retained by either the VITA or TCE sponsor or by the IRS. This information must not be given to a third party, including a third party Transmitter. The IRS is responsible for ensuring that Form 8453 is sent to the appropriate IRS office or submission processing center. However, the IRS may delegate to the VITA or TCE sponsor the responsibility for mailing Form 8453 to the appropriate local office or submission processing center.

## Employers Offering IRS *e-file* as an Employee Benefit

The following procedures apply to employers who choose to offer electronic filing as an employee benefit to business owners and spouses, employees and spouses, and/or dependents of business owners and employees. These rules do not apply if an employer contracts with an ERO to originate the electronic submission of the tax return.

An employer may offer electronic filing as an employee benefit whether the employer chooses to transmit tax returns or contracts with a third party to transmit the tax returns. If an employer contracts with a third party to transmit tax returns, the employer may collect from participating employees a fee that is directly related to defraying the actual cost of transmitting the electronic portion of the tax return.

An employer and the IRS may enter into an agreement that provides for the retention of copies of tax returns including Forms 8453 and IRS *e-file* Signature Authorizations. In the absence of such an agreement, the employer must retain this information. This information is not to be given to a third party, including a third party Transmitter.

# TOMMY JORDAN
## 2423 PRICE STREET
## MONTGOMERY, ALABAMA

November 1, 2005

Internal Revenue Service
1285 Carmichael Way
Montgomery, Alabama 36106

        Re: Tommy Jordan (TIN 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)
        Examination of TaxTyme
        File Ref:

Dear Sirs:

        In connection with a Internal Revenue Service examination of me and my business, TaxTyme, during this year 2005, please accept this letter as a formal request pursuant to the Freedom of Information Act, 5 U.S.C. 552, for all the items and information listed below:

        1. Examination work papers of Jeanne S. Armstrong, C.P.A. (ID No. 72-19009) who performed the examination of TaxTyme for the taxable period between January 1, 2005 and the date of this letter.

        2. All correspondence, records of conversations, conference notes, internal memoranda and other documentation of all Internal Revenue Service personnel with respect **solely** to the initial examination of the records of TaxTyme by Ms. Armstrong.

        3. The names and addresses of all other tax preparation businesses similar to TaxTyme which were examined by Ms. Armstrong.

        4. All correspondence, communications, written procedures, internal memoranda, instructions, audit guidelines, policy considerations and examination policies pertaining to an examination of *e-file* Providers originating from: (i) the local offices of Internal Revenue Service having jurisdiction over Alabama *e-file* Providers located in Alabama; (ii) the regional offices of Internal Revenue Service having jurisdiction over *e-file* Providers in Alabama; and (iii) the National Office of Internal Revenue Service.

        5. All files of Revenue Procedures and Revenue Rulings pertaining in any way to the examination of *e-file* Providers for monitoring their compliance with the requirements described in Chapter 3 of I.R.S. Publication 1345 and/or with reference to the intent and meaning of the bulleted phrase "retaining and making records available to the IRS" as described in the "Provider Roles and Responsibilities" section of I.R.S. Publication 3112 at page 19 .

Internal Revenue Service                    -2-                    November 1, 2005

  6. All files, in-house correspondence, Chief Counsel documents, internal memoranda, notes, minutes of meetings and/or other discussions located within the Internal Revenue Service's National Office pertaining in any way to the purpose and intent behind or related to the concept, process or idea of examining the records of *e-file* Providers for monitoring their compliance with the requirements described in Chapter 3 of I.R.S. Publication 1345 and/or with reference to the intent and meaning of the bulleted phrase "retaining and making records available to the IRS" as described in the "Provider Roles and Responsibilities" section of I.R.S. Publication 3112 at page 19 .

  7. The names and addresses of all *e-file* Provider businesses similar to TaxTyme which were examined by Mr. Jeff Ballard (ID No. 58-10208) between January 1, 2005 and the date of this letter.

  8. The names and addresses of all other *e-file* Provider businesses similar to TaxTyme which were examined by any other Internal Revenue Service personnel in Alabama between January 1, 2005 and the date of this letter.

  9. All documents, memoranda, procedural guidelines, protocol, and statements regarding the policy to be followed, actions to be taken, and notices to be issued by Internal Revenue Service personnel when certain *e-file* Providers are determined to have failed to comply with one or more requirements of participation in the *e-file* Provider program as more particularly described in the "Sanctioning" section, pp 25-6 of Internal Revenue Service Publication 3112 (Rev. 11-04).

  10. The Internal Revenue Service policy regarding appropriate procedures to follow to encourage and ensure compliance from *e-file* Providers.

  The person to whom this request should be directed is Richard L. Pyper, J.D., C.P.A., whose address is P. O. Box 11706, Montgomery, Alabama 36111. Please provide copies to Mr. Pyper of all information requested. I do not want an opportunity to first inspect them. I hereby agree to pay all fees related to the search for and duplication of the above-referenced information.

  Also, enclosed find a copy of Form 2848, power of attorney, designating Richard L. Pyper, J.D., C.P.A. as my attorney with respect to the information requested, and an affidavit signed by me.

       Sincerely yours,

       Tommy Jordan

Enclosures

# AFFIDAVIT

BEFORE ME, A NOTARY PUBLIC FOR THE STATE OF ALABAMA AT LARGE, APPEARED TOMMY JORDAN, WHO BEING OF LAWFUL AGE, SAYS AS FOLLOWS:

1. MY NAME IS TOMMY JORDAN, AND I AM OVER THE AGE OF 21 YEARS.

2. MY SOCIAL SECURITY NUMBER IS 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.

3. MY SIGNATURE APPEARS ON THE COVER LETTER WHICH REFERS TO THIS AFFIDAVIT.

_____
TOMMY JORDAN

SWORN TO AND SUBSCRIBED BEFORE ME ON THIS THE ___31st___ DAY OF OCTOBER, 2005.

_____
NOTARY PUBLIC

MY COMMISSION EXPIRES:

___9-14-2008___

tjordan/foiarqst.pkg
10/28/2005.1



**DEPARTMENT OF THE TREASURY**
INTERNAL REVENUE SERVICE
WASHINGTON, D.C. 20224

SMALL BUSINESS/SELF-EMPLOYED DIVISION

*February 16, 2006*

Richard L Pyper, CPA
PO Box 11706
Montgomery, AL  36111

Dear Sir or Madam:

This is in further response to your Freedom of Information Act (FOIA) request
dated November 1, 2005.

We are continuing to process your request.  If we are unable to respond by
March 16, 2006, we will contact you and inform you of the status of your case.
We are sorry for any inconvenience the delay may cause.

The additional time is needed for retrieving, copying & redacting documents.

If you have questions, please reference case number 06-2006-00568 (JORDAN,
TOMMY & TAX TYME) and contact K. Czeskleba at:  Internal Revenue Service,
401 W Peachtree St NW, Stop 602-D, Atlanta, GA  30308-3539 or (205) 912-
5372.

Sincerely,

Mel Winburn

Mel Winburn
Disclosure Officer
ID # 58-07671



**DEPARTMENT OF THE TREASURY**
INTERNAL REVENUE SERVICE
WASHINGTON, D.C. 20224

SMALL BUSINESS/SELF-EMPLOYED DIVISION

*January 17, 2006*

Richard L. Pyper
P.O. Box 11706
Montgomery, AL  36111

Dear Sir or Madam:

This is in further response to your Freedom of Information Act (FOIA) request
dated November 1, 2005.

We wrote to you December 19, 2005, asking for more time to process your
request for Internal Revenue Service records.  We are continuing to process your
request.  If we are unable to respond by February 16, 2006, we will contact you
and inform you of the status of your case.  We are sorry for any inconvenience
the delay may cause.

The additional time is needed for retrieving, copying & redacting documents.

If you have questions, please reference case number 06-2006-0000568
(JORDAN, TOMMY & TAX TYME) and contact K. Czeskleba at:  Internal
Revenue Service, 401 W Peachtree St NW, Stop 602-D, Atlanta, GA  30308-
3539 or (404) 338-8539.

Sincerely,

*Karen Czeskleba*

for  Mel Winburn
Disclosure Officer
ID # 58-07671



**DEPARTMENT OF THE TREASURY**
INTERNAL REVENUE SERVICE
WASHINGTON, D.C. 20224

SMALL BUSINESS/SELF-EMPLOYED DIVISION

January 6, 2006

Richard L. Pyper, J.D., C.P.A.
P.O. Box 11706
Montgomery, AL  36111

RE:    Freedom of Information Act Request—Tommy Jordan dba Tax Tyme

Dear Mr. Pyper:

This is in reply to a Freedom of Information Act Request by Tommy Jordan asking that response to his request be directed to you.  He requested information pertaining to any investigation records that the Service might have concerning monitoring visits made by Jeanne Armstrong and Jeff Ballard as well as policy and procedures concerning e-File providers.

We are transferring part of his request (items 4-6, 9 and 10) to Disclosure Office Three for processing because that information requested is under their jurisdiction.  A copy of this letter is being sent to that office, along with a copy of your request.  If you have any questions on the status of your request, you may contact their office at the following address:

> Internal Revenue Service
> Disclosure Office Three SE:S:CLD:GLD:D3
> George Fallon Fed Bldg., RM 1210
> 31 Hopkins Plaza
> Baltimore, MD  21201

Our office is continuing to process the balance of the items requested.  Should you have questions concerning this transfer you may contact Disclosure Specialist, Karen Czeskleba, at (404) 338-8539, Internal Revenue Service, 401 W. Peachtree St., NW Suite 1905, Disclosure, Stop 602-D, Atlanta, GA  30308-3539.  Please refer to case # 06-2006-00568.

Sincerely,

Mel Winburn
Disclosure Officer, Atlanta
Governmental Liaison and Disclosure

*Karen Czeskleba*
By:  Karen Czeskleba
Senior Disclosure Specialist
ID#72-19071



**DEPARTMENT OF THE TREASURY**
INTERNAL REVENUE SERVICE
WASHINGTON, D.C. 20224

SMALL BUSINESS/SELF-EMPLOYED DIVISION

*December 19, 2005*

Richard L Pyper
CPA
PO Box 11706
Montgomery, AL  36111

REF:  Case # 06-2006-00568    (JORDAN, TOMMY & TAX TYME)

Dear Sir or Madam:

This is in reference to your Freedom of Information Act (FOIA) request dated November 1, 2005, and received in our office on November 21, 2005.  We are unable to respond to your request by December 20, 2005, which is the 20 business-day period prescribed by law.  We apologize for any inconvenience this delay may cause.  You may expect a response by January 17, 2006.  Since an administrative appeal is limited to a denial of records, it does not apply in this situation.  However, you may instead file suit after the statutory time period for response has lapsed.

The FOIA process is not an additional avenue of recourse during administrative tax proceedings; it merely provides access to existing records.  Extending the time period for our response to your request has no bearing on any ongoing tax matter such as the collection due process or an examination appeal.

### STATUTORY EXTENSION OF TIME FOR RESPONSE

In certain situations the FOIA allows us to invoke an additional ten-day statutory extension.  To respond to your request, we require additional time to search for and collect the requested records from other locations.  Therefore, we have extended the statutory response date (after which you can file suit), to January 5, 2006, as provided for in the FOIA (5 U.S.C. 552(a)(6)(B)) and its regulations (31 C.F.R. 1.5(j)).

### ADDITIONAL EXTENSION OF TIME LIMIT

We realize we will be unable to locate and consider releasing the Internal Revenue Service records covered by your request by the expiration of the statutory period.  Therefore, we extended the response date to January 17, 2006, by which time we reasonably believe we can provide a final response to your request.

If you agree to this extension, no reply to this letter is necessary.  If we subsequently deny your request, you still have the right to file an appeal.  You may wish to consider limiting the scope of your request so that we can process it

more quickly. If you want to limit your request, please contact the individual
named below.

### IF YOU DO NOT AGREE TO THIS EXTENSION

If you do not agree to an extension beyond the statutory period, and do not want
to modify the scope of your request, you may file suit. See 5 U.S.C.
552(a)(6)(C)(i) and 31 C.F.R.1.5(j). To file suit, you must petition the U.S.
District Court where you live or work, where the records are located, or in the
District of Columbia.

You may file suit no earlier than January 5, 2006. Your petition will be treated
according to the Federal Rule of Civil Procedure applicable to actions against an
agency of the United States. These procedures require that the IRS be notified
of the pending suit through service of process, which should be directed to:

> Commissioner of Internal Revenue
> Attention: CC:PA:DPL
> 1111 Constitution Avenue, N.W.
> Washington, DC 20224

### CONTACT INFORMATION

If you have questions regarding this correspondence, you may contact
K. Czeskleba, at 205-912-5372, or by mail at: Internal Revenue Service, 401 W
Peachtree St NW Stop 602-D, Atlanta, GA 30308-3539.

Sincerely,

Mel Winburn

Mel Winburn
Disclosure Officer
ID # 58-07671