IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| TOMMY JORDAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 2:06-mc-3279-MEF |
| | ) | [wo] |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

## RECOMMENDATION OF THE MAGISTRATE JUDGE

Pursuant to the referral of this case for action on all pretrial matters and for recommendation as may be appropriate (Doc. 2, Jan. 9, 2006), the undersigned Magistrate Judge makes recommendations herein for final adjudication of the *Petition to Quash Third Party Summons,* filed by the Petitioner, Tommy Jordan ("Jordan") (Doc. 1, Jan. 4, 2006), and the United States' *Cross-Petition* (Doc 4, Mar. 6, 2006), to which Jordan responded in opposition on March 22, 2006 (Doc. 7). In controversy is compliance with summonses issued by the Internal Revenue Service pursuant to 26 U.S.C. § 7604.

Undisputed is this court's subject-matter jurisdiction arising from § 7609(h) of the Internal Revenue Code of 1986, as amended ("the Code"). Both Petitioner Jordan and Richard L. Pyper ("Pyper"), the recipient of the Third Party summons, reside in Montgomery County, Alabama. As discussed, the court concludes that the *Petition* is due to be denied and the *Cross-Petition* granted.

## I.

## CONTENTIONS

On December 13, 2005, the Internal Revenue Service issued to Pyper – a lawyer and a CPA who filed the *Petition* as Jordan's counsel – a summons "for certain files prepared and maintained for

and on behalf of the [Jordan's] clients while engaged in the tax return preparation business known as Tax Tyme, a sole proprietorship owned by Jordan." The summons is invalid, Jordan contends, "because notice was not given to any of [his] clients whose files are the subjects of the documents requested." Jordan attacks the summons as "over broad, unduly burdensome, and not reasonably limited in scope and subject matter."[1]

As additional reasons to quash the summons, Jordan submits: (1) that the United States "already has much of the information that is the subject of the summons"; (2) that "[t]he summons has not been issued in good faith, but with the debilitating, pejorative intent both of conducting a criminal investigation against [Jordan] and of driving [him] out of business."; (3) that compliance with the summons "undermines Pyper's ability to give legal counsel and advice to Petitioner and constitutes an unnecessary burden on Pyper..."; (4) that the summons "requires disclosure of irrelevant private and confidential information about Petitioner's clients who are in no way related to the Respondent's investigation"; and (5) that the United States fails to satisfy the four-pronged

---

[1]The summons by Special Agent Louie Wilson, an IRS employee in the Criminal Investigation Division, requested the following-described records related to the preparation and filing of 2004 federal income tax records for customers of Tax Tyme:

    1. Copies of client returns;
    2. Records related to client's personal information (copies of Driver's License, Social Security Cards, ID cards, dependent information, income and expense records, records related to deductions, etc.);
    3. Records related to refund anticipation loans (applications, copies of checks, etc.);
    4. Records of payments received from clients;
    5. Correspondence with clients, Household Bank and the Internal Revenue Service.

*See Pet.*, Ex. A.

burden of proof specified in *U.S. v. Powell*, 79 U.S. 48, 85 S.Ct. 248 (1964).[2]

In response to the *Petition*, the United States avers that Petitioner Jordan has failed to respond to a summons issued to him on October 14, 2005 – served by handing an attested copy to his counsel, Pyper – which demanded from him the same records requested in the December summons issued to Pyper.   The United States denies having possession of the testimony and materials sought by the summons – with the limited exception of correspondence between the IRS and Jordan – and maintains that the "testimony and materials sought are necessary and relevant to the investigation of Jordan for the 2004 tax year, for the purpose of inquiring into any offense connected with the administration or enforcement of the Internal Revenue laws."

The response by the United States includes an affidavit from the assigned IRS agent, who represents that Jordan responded to his subpoena with a letter from his lawyer, Pyper, advising that Jordan had delivered the documents to him  "prior to the date of [the October] summons as collateral for an unpaid debt and for such other valid, legal purposes as are applicable, including but not limited to the attorney client privilege."   According to the Agent, Pyper responded to his December summons by appearing on January 9, 2006, and advising "that he would not be producing the documents requested" and would petition, instead, to quash the summons. [3] The United States

---

[2]*Pet.* ¶¶ 3-9.

[3]*United States' Answer and Cross-Petition to Jordan's Petition to Quash Third Party Summons and Affidavit of Louie Wilson,* ¶¶ 15, 17-20, Ex.1 (Doc. 4).   Regarding the summons issued to him, Petitioner Jordan represents in his Petition: "The first summons, demanding the same information and access to Petitioner's client files was issued to Petitioner on October 14, 2005, but has apparently been withdrawn when it was disclosed that the files were then in Pyper's possession." (*Pet.* at 2, n.1).

moves, with a supporting brief,  for an order "denying Tommy Jordan's petition to quash the IRS administrative summons served on attorney Richard L. Pyper and granting the Government's motion for an order directing Tommy Jordan to comply with a second administrative summons that was served on Jordan."[4]

Jordan's response in opposition argues that (1) the scope and purpose of this investigation is an unauthorized fishing expedition; (2) the IRS has not complied with its own guidelines respecting the Authorized e-file Provider Program; and(3) the IRS has not yet complied with a Freedom of Information Act request submitted by Petitioner on November 1, 2005.[5]

## II.

### ANALYTICAL STANDARDS

"The IRS' power to investigate under section 7602 has been described as  broad and expansive." *La Mura v. United States*, 765 F. 2d 974, 979 (11th Cir. 1985)(internal quotations omitted). However, its investigative power is not limitless.  *Id.*  In an action to enforce an administrative summons, the United States  has the initial burden of proving that:

(1)the investigation will be conducted pursuant to a legitimate purpose;
(2)the inquiry may be relevant to the purpose;
(3)the information sought is not already within the Commissioner's possession; and
(4)the administrative steps required by the Internal Revenue Code have been followed.

*United States v. Powell*, 379 U.S. 48, 58 (1964).  "The IRS may satisfy its minimal burden 'merely by

---

[4]*United States' Motion to Deny Petition to Quash and to Grant Cross-Petition for Enforcement* (Doc. 5, Mar. 6, 2006).   As evidentiary support for the requested relief, the United States attaches the *Declaration of Internal Revenue Service Special Agent Louie Wilson.*

[5]Resp. (Doc. 7).

4

presenting the sworn affidavit of the agent who issued the summons attesting to these facts.'" *United States v. Medlin*, 986 F. 2d 463, 466(11th Cir. 1993), *quoting La Mura v. United States*, 765 F. 2d 974, 979 (11th Cir. 1985).

Once the United States  has made a *prima facie* showing, the burden shifts to the party contesting the summons to disprove one of the four elements of the government's *prima facie* showing or convince the court that enforcement of the summons would constitute an abuse of the court's process. *Medlin*, 986 F. 2d at 466; *Powell*, 379 U.S. at 58 (The court may "inquire into the underlying reasons for the examination.  It is the court's process which is invoked to enforce the administrative summons and a court may not permit its process to be abused...The burden of showing an abuse of the court's process is on the taxpayer.").

An abuse of the court's process occurs if "the summons had been issued for an improper purpose, such as to harass the taxpayer or to put pressure on him to settle a collateral dispute, or for any other purpose reflecting on the good faith of the particular investigation." *Powell*, 379 U.S. at 58.  "The burden on the contesting party is a heavy one, requiring allegation of specific facts and introduction of evidence." *United States v. Leventhal*, 961 F. 2d 936, 940 (11th Cir. 1992) (internal citations and quotations omitted);  *see also LaSalle National Bank*, 437 U.S. 298, 316 (1978) ("Without a doubt, this burden is a heavy one.").

## III.

## ANALYTICAL DISCUSSION

Jordan does not request a hearing on either his pending motion to quash OR the United States' request to enforce the third-party summons.  Relying on *United States v. Balanced Fin'l*

5

*Mgt. Inc.*, 769 F. 2d 1440 (10th Cir. 1985), the United States contends that:

> If the petitioner cannot refute the United States' <u>prima facie</u> showing, or cannot provide factual support for an affirmative defense, the district court should properly dispose of the proceedings on the papers before it and without an evidentiary hearing.

*Govt. Mot.* at 8 (emphasis in original).  As now discussed, the court concludes that Jordan has failed to present an evidentiary submission which refutes the United States' *prima facie* showing and has not otherwise demonstrated  any basis for quashing the summons in controversy; accordingly,  no evidentiary hearing is warranted.[6]

### A.    Prima Facie Case

Jordan's absolute failure to refute *with evidence* the IRS Special Agent's affidavit attesting to the government's four evidentiary burdens[7] makes unnecessary any extended discussion.  Because the entirety of Jordan's submission is mere argument unembellished by "allegation of specific facts and introduction of evidence," *Leventhal*, 961 F.2d at 940, the court is constrained to conclude that Jordan has not sustained  his heavy burden of disproving any of the four necessary elements of the

---

[6]Describing "the  adversary hearing to which the taxpayer is entitled before enforcement is ordered,"  *Powell*, 379 U.S. at 58,  the United States Supreme Court nonetheless sanctioned a summary proceeding in a summons enforcement case "so long as the rights of the party summoned are protected and an adversary hearing, if requested, is made available." *Donaldson v. United States*, 400 U.S. 517, 541 (1971).  A taxpayer's right to an adversary hearing is not absolute.  *Southeast First National Bank of Miami Springs*, 655 F. 2d 661,  665 (5th Cir. Unit B 1981)  (discussing Fifth Circuit caselaw); *see also Masek v. United States*, No. 86-1039-CIV-KING, 1986 U.S. Dist. LEXIS 20005, at *4 (S.D. Fla. Sept. 23, 1986) ("If the [contesting party's] affidavits show there is an issue of fact, the Court may allow  discovery  or  conduct  an  evidentiary  hearing,  but  otherwise,  a  hearing  is unnecessary.").

[7]*Declaration of Internal Revenue Service Special Agent Louie Wilson* ("Wilson Aff."), *United States' Motion to Deny Petition to Quash and to Grant Cross-Petition for Enforcement* (Doc.5, Mar. 6, 2006).

prima facie case established by affidavit.

### 1.  *Legitimate Purpose*

The legitimacy of the purpose for the investigation in controversy – the first element of the prima facie case– is easily established by the agent's declaration that he is "inquiring into any offense connected with the administration or enforcement of the Internal Revenue laws for the 2004 tax year." *Wilson Aff.*, ¶ 2.  Congress enacted §7602(a) and (b) of Title 26, United States Code,  to permit the IRS to issue summonses for the purposing of determining an individual's tax liability and inquiring into any offense connected with the administration or enforcement of the internal revenue laws.  No summons shall issue when there is a Department of Justice referral,  26 U.S.C. §7602(d)[8] and none is shown on this record.   Jordan provides no probative factual support for his attribution to the United States of a bad-faith, "debilitating, pejorative intent both of conducting a criminal investigation against [Jordan] and of driving [him] out of business."

### 2.  *Relevance*

Evaluated by the rather broad standard stated in *United States v. Arthur Young & Co.*, 465 U.S. 805, 814 (1984),  Jordan's "relevancy" challenge falls easily.

> As the language of §7602 clearly indicates, an IRS summons is not to be judged by the relevance standards used in deciding whether to admit evidence in federal court.  The language "may be" reflects Congress' express intention to allow the IRS to obtain items of even *potential* relevance to an ongoing investigation, without reference to its admissibility.  The purpose of Congress is obvious: the Service can hardly be expected to know whether such data will in fact be relevant until they are procured and scrutinized.  As a tool of discovery, the §7602 summons is critical to the investigative and enforcement functions of the IRS; the Service therefore should not be required

---

[8]As long as the IRS has not initiated a criminal referral to the U.S. Department of Justice, the investigation is not deemed criminal and the summons may issue.  *See La Mura v. United States*, 765 F. 2d 974, 980 n. 9 (11th Cir. 1985).

to establish that the documents it seeks are actually relevant in any technical, evidentiary sense.

*Id.* (internal citations omitted)(emphasis in original). In addressing the relevancy inquiry, the Eleventh Circuit explained that "the government's burden of showing relevance in this context is slight. If the information sought by an IRS summons might throw light upon the correctness of the taxpayer's return, then it is deemed to be relevant." *La Mura*, 765 F. 2d at 981 (internal quotations and citations omitted). Thus, the United States must demonstrate that it has a "realistic expectation rather than an idle hope that something might be discovered." *Id.*

The United States sustains its "slight" burden in this case by Agent Wilson's sworn declaration that 2004 tax returns prepared and filed by Jordan for clients triggers the summons:

> It is necessary and relevant to examine the books, records, papers, or other data sought by the summons . . . in order to investigate the tax return preparation and filing activities of Tommy Jordan, doing business as Tax Tyme, for the purpose of inquiring into any offense connected with the administration or enforcement of the Internal Revenue laws for the 2004 tax year.[9]

### 3. *IRS possession of Summoned Records; Compliance with Administrative Procedures*

Agent Wilson denies under oath that the IRS is already in possession of the records and documents which are the subject of the administrative subpoena. (Wilson Aff.,¶ 9) Thus, Jordan is bound to show evidence to the contrary and does not do so.

Regarding Jordan's complaint that the IRS failed to provide to his clients the notice required

---

[9]*Wilson Aff. ¶ 10.*

under 26 U.S.C. §7602(c),[10] the statute, at § 7602(c)(3)(C), does provide an exception for notice to with respect to any criminal investigation. Moreover, not in controversy is the determination of tax liability for any of Jordan's clients; instead, the investigation focuses on potential offenses committed by Jordan himself in connection with the preparation of tax returns for those clients. The United States contends correctly that it satisfied the applicable notice requirements by providing notice to Jordan, who was identified in the summons issued to his counsel; because none of Jordan's clients was specified in the summons, none warranted individual notice. *See, e.g., United States v. Arthur Young & Co.*, 465 U.S. 805, 810 n. 4 (1984) (referencing §7609 notice requirements in affirming propriety of notice to the entity taxpayer under investigation, also identified in the third party summons).

## B.    Additional Challenges

*Overbreadth:*    Jordan fails to buttress his characterization of the summons as *"overbroad."* "An IRS summons is overbroad if it does not advise the summoned party what is required of him with sufficient specificity to permit him to respond adequately to the summons." *Medlin*, 986 F. 2d at 467 (internal quotations omitted).

*Interference with Attorney-Client Relationship*:    Nor does he present any evidentiary submission to lend credence to his belief that compliance with the summons "undermines Pyper's

---

[10]This statute provides:

> An officer or employee of the Internal Revenue Service may not contact any person other than the taxpayer with respect to the determination or collection of the tax liability of such taxpayer without providing reasonable notice in advance to the taxpayer that contacts with persons other than the taxpayer may be made.

9

ability to give legal counsel and advice to Petitioner and constitutes an unnecessary burden on Pyper..."   The burden of proving the attorney-client privilege rests on the asserting party, but the privilege  is limited to confidential communications between the lawyer and client made for the purposes of securing legal advice; it does not extend to facts.  *Upjohn Co. v. United States*, 449 U.S. 383, 398 (1981).   "The books and papers of a taxpayer, even though received by an attorney for purposes of consultation, cannot be regarded as privileged communications." *Falsone v. United States*, 205 F. 2d 734, 739 (5th Cir. 1953).   Moreover, blanket assertions of privilege are unacceptable; instead, claims of privilege should be made on a document-by-document basis.  *See In re Grand Jury Subpoena*, 831 F. 2d 225, 227 (11th Cir. 1987); *United States v. Davis*, 636 F. 2d 1028 (5th Cir. Unit A 1981).

*No Second Inspection*:   Jordan claims that the IRS subpoena violates  26 U.S.C. §7605(b), which provides:

> [n]o taxpayer shall be subjected to unnecessary examination or investigations, and only one inspection of a taxpayer's books of account shall be made for each taxable year unless the taxpayer requests otherwise or unless the Secretary, after investigation, notifies the taxpayer in writing that an additional inspection is necessary.

The contention arises from two averments: (1) that " [an IRS employee], Jeanne S. Armstrong, C.P.A. (ID No. 72-19009), previously reviewed the files of Petitioner's clients in an earlier improper examination conducted on TaxTyme's premises without the knowledge of Petitioner's clients"; and (2) that Agent Wilson "met previously with the Petitioner – without the presence of legal counsel – and in an effort to extract some admission of wrongdoing represented to Petitioner that he, Wilson, already had files in his possession which implicated Petitioner in some criminal act, the substance of which has yet to be disclosed to Petitioner or his Attorney." Thus, Jordan argues, any additional

review must be "specifically and directly requested by Petitioner or the respective client to do so" or must be preceded by IRS notice to the client " in writing of its intent to scrutinize the file for a second time."[11]

Binding precedent from the Fifth Circuit explains the meaning of the statutory provision cited:

> We think that the statement in the statute "Only one inspection of a taxpayer's books of account shall be made for each taxable year" is to be read in pari materia with the first clause of the Section: "No taxpayer shall be subjected to unnecessary examination or investigations"...We do not believe the use of the word "inspection" in Section 7605(b), as contrasted with the words "unnecessary examination or investigations" can be so restricted as to mean that there is an "inspection" every time the agent or special agent looks at a book of account of a taxpayer.

*United States v. Schwartz*, 469 F. 2d 977, 983 (5th Cir. 1972). Moreover, when an investigation has not been completed, additional examinations do not constitute a second inspection within the meaning of the statute requiring written notice. *Schwartz,* 469 F. 2d at 985; *see also National Plate & Window Glass Co., Inc. v. United States*, 254 F. 2d 92, 93 (2d Cir. 1958) ("cursory examination of taxpayer's records...was not shown to have completed the investigation: it did not constitute an 'inspection within the meaning of the statute").

Some district courts within the Eleventh Circuit have held that the prohibition on multiple examinations of a taxpayer does not apply to examinations of third parties and their records even if the records or information sought from the third party concerns the taxpayer. *See Knauss v. United States*, 28 F. Supp. 2d 1252, 1254 (S.D. Fla. 1998), *citing United States v. Grayson County State Bank*, 656 F. 2d 1070, 1076 (5th Cir. Unit A 1981); *Williams v. United States*, No. 86-T-331-S, 1986 U.S.

---

[11]Pet. ¶¶3-5.

11

Dist. LEXIS 23725, at *17 (M.D. Ala. June 24, 1986) ("In any event, section 7605(b) only prohibits a second inspection of the taxpayer's books and does not apply to examinations of third parties' books and records.").

Finally, in *Powell*, the Supreme Court held that the showing of an abuse of process necessary to quash an administrative summons must be "predicated on more than the fact of re-examination". *Powell*, 379 U.S. at 51.

**FOIA Request:** Petitioner's assertion that the IRS has not complied with his FOIA requests is irrelevant since that Act does not apply to IRS summonses. *See United States v. Wills*, 475 F. Supp. 492, 494 (M.D. Fla. 1979); *see also Anklam v. United States*, No. 4-83-740, 1983 U.S. Dist. LEXIS 10967 (D. Minn. Dec. 9, 1983).

## III.

## CONCLUSION

Pursuant to the foregoing discussion, it is the Recommendation of the Magistrate Judge that the *Petition to Quash Thirty Party Summons,* docketed as a *Motion to Quash* (Doc. 1)*, be DENIED* and that the United States' *Cross-Petition,* docketed as a *Motion to Dismiss Petition to Quash and to Grant Cross-Petition* for Enforcement (Doc 4),  be GRANTED to the full extent of the request that Petitioner Jordan be ordered to obey the summons issued to him on October 14, 2005.

It is further ORDERED that the parties shall file any objections to the said Recommendation not later than **May 2, 2006.**  Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party is objecting.  Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); *see Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982); *see also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

DONE THIS 18TH DAY OF APRIL, 2006.

**/s/ Delores R. Boyd**
DELORES R. BOYD
UNITED STATES MAGISTRATE JUDGE